BARRY R. FEERST & ASSOCIATES (BRF-3836)
Attorneys for Plaintiffs
194 South 8th Street
Brooklyn, New York 11211
t(718)384-9111
f(718)384-5999

STATE OF NEW YORK
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

SYED JAVED and ANEELA WASIF,                    15-cv-7424 FB-SMG

                          Plaintiffs,     **AMENDED COMPLAINT**

          -against-                            Plaintiff Demands
                                        Trial by Jury

MEDGAR EVERS COLLEGE OF THE CITY
UNIVERSITY OF NEW YORK; JAMES HAGGARD,
Deputy CIO; CLAUDIA COLBERT as former
Chief Information Officer; EDI RUIZ, as
current Chief Information Officer; and
TANYA ISAACS, Director of Human Resources
being sued Individually as  employees of
defendant MEDGAR EVERS COLLEGE OF
THE CITY UNIVERSITY OF NEW YORK

                          Defendants.
----------------------------------------X

    Plaintiffs SYED JAVED ("JAVED") and ANEELA WASIF ("ANEELA") by

their attorneys Barry R. Feerst & Associates, LLC, as and for their

Complaint against defendants MEDGAR EVERS COLLEGE OF THE CITY

UNIVERSITY OF NEW YORK ("MEDGAR EVERS"); JAMES HAGGARD ("HAGGARD");

CLAUDIA COLBERT ("COLBERT"), EDI RUIZ ("RUIZ"); and TANYA ISAACS

("ISAACS") respectfully allege:

**INTRODUCTION**

    1. This is an action for equitable relief, reinstatement of

employment as an H1B/TN employee, and for money damages on behalf

of Javed who was and is being deprived of his statutory rights as

a result of Defendants' discriminatory and retaliatory conduct for
which Javed's remedies at law are insufficient.

2. Further this action is for equitable relief; reinstatement
of Aneela's H4/TD status, and for damages on behalf of Aneela who
was and is being deprived of her rights as a result of Defendants'
discrimination and retaliation against her husband Javed, for which
Aneela's remedies at law are insufficient.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 18
U.S.C. § 1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure
protection of and redress for the deprivation of rights based upon
the provisions of and pursuant to:

a. Title VII of the Civil Rights Act of 1964 ("Title VII");
the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights
Act of 1871, 42 U.S.C § 1983, 42 U.S.C § 1985 **and** New York State
Human Rights Law, N.Y. Exec. Law §§ 292, 296; N. Y. City Admin.
Code §§ 8-101 to 131; and NY Labor Law § 215.

b. Freedom from the infliction of emotional distress and loss
of consortium.

4. The unlawful employment practices, violations of
Plaintiffs' rights complained of herein were committed within the
Eastern District of New York.

5. The pendent jurisdiction of the US District Court is

invoked with respect to Plaintiffs' claims under New York State Law, pursuant to 28 U.S.C. § 1367.

## PROCEDURAL REQUIREMENTS

6. Plaintiffs have commenced this suit within the applicable statute of limitations.

7. On or about October 3, 2015, Javed received a Dismissal and Notice of Right to Sue from the United States Equal Employment Opportunity Commission ("EEOC").

## PLAINTIFFS

8. JAVED is a male citizen of Pakistan and Canada, over 21 years of age, a resident of Queens County and was an employee of Medgar Evers for about fourteen years at the time of the wrongdoing complained of.

9. ANEELA, the spouse of Javad, is a female citizen of Pakistan and Canada, residing in the United States with the parties two American born minor children.

10. At all times MEDGAR EVERS was aware that Javed and Aneela relocated from Canada to New York for employment by Medgar Evers; that the parties now have two minor children; that Aneela's H4/TD status was dependent upon Javed's H1B/N status; and that Medgar Evers assumed a duty to ensure that Plaintiffs' legal status remained valid.

## DEFENDANTS

11. MEDGAR EVERS maintains offices in the State and City of

New York in the County of Kings and is a college within the City University of New York system which was and is a public university system organized and existing under the laws of the State of New York and was Javed's employer.

12. HAGGARD, Deputy CIO of CUNY at all relevant times during Javed's employment and who conspired in, supported and approved the discriminatory and retaliatory conduct by his staff, including Colbert and Ruiz, and in the subsequent termination of Javed.

13. COLBERT, Chief Information Officer ("CIO") of Medgar Evers IT Department from 2010 to 2013, led the systematic discrimination and retaliation against Javed and conspired with co-defendants in his termination as herein after alleged.

14. RUIZ, replaced Colbert as CIO on or about 2014 and continued the systematic discrimination and retaliation against Javed and conspired with co-defendants in his termination as herein after alleged.

15. ISAACS, was at all times relevant, the Human Resources Manager who acted in bad faith and conspired with co-defendants by failing both to properly investigate charges and claims made against Javed or to ensure that co-defendants adhered to the CUNY disciplinary protocol and employee agreements, and were not able to terminate Javed through fabricated charges and waiting until Javed's legal status expired.

## BACKGROUND

16. Plaintiffs are Pakistani-Canadian Muslims, and were visa holders.

17. Javed was employed by Medgar Evers since 2001 within the Information Technology field ("IT") and received numerous positive performance evaluations, increased responsibilities, salary raises and promotions during his fourteen year tenure until the reign of Colbert[1].

18. Javed held the senior title as IT Security Manager at the time of his discriminatory and retaliatory termination[2].

19. Defendants through their agents have discriminated against employees of Muslim or Middle Eastern/South Asian, creed, nationality, race or identity.

20. Defendants through their agents have discriminated against employees of foreign national origin and or those lacking American citizenship.

21. Defendants through their agents have undertaken to engage improper and sham internal investigations, ignoring CUNY protocols and procedures, when Middle Eastern/South Asian and or Muslim

---

[1] Colbert entered the department in 2010 and systematically sought to and did remove Javed's supervisor (also of Middle Eastern and Muslim identify) from IT responsibilities and limited the team to phone management and similar duties.

[2] After Javed supported the discrimination claim of a co-worker against Colbert, Colbert issued statements and notices advising that Javed would be terminated which plainly demonstrates her discriminatory and retaliatory intent and conduct.

employees are concerned.

22. Specifically, upon Colbert's entrance into the IT department a hostile work environment was created. Colbert singled out and targeted with intimidation, harassment and threats those employees of Middle Eastern or South Asian national origin and race, and or of the Islamic religion.

23. Defendants publicly humiliated such employees, limited or denied access to resources in order to impede performance of the duties by such employees, removed staff assigned to such employees, and undertook acts to force the removal or resignation of such employees from the department, including but not limited to:

a. Demanding that supervisors terminate or write-up Muslim staff members, publicly humiliate employees what were of Middle Eastern or South Asian national origin and race, and or of the Islamic religion, and prevented such employees from completing their work and or assigning them duties not within their title.

b. Transferring the entire staff of the Head Librarian Danish Yazdani, an Iranian Muslim, and another senior level employee for over twenty years. Thereby rendering Yazdani unable to perform his duties and resign. Immediately upon his resignation a new head librarian (American) was appointed and staff that previously served under Yazdani were transferred back.

24. Defendants through their agents retaliated against Javed for his support of a co-worker's claim of discrimination.

25. The conduct and attitude alleged above is not directed towards American employees.

26. Javed was subjected to and targeted for additional retaliatory action on the basis of his citizenship status as an H1B and TN Visa holder.

27. Upon Javed's providing an affidavit in support of the discrimination claim filed against Colbert by another employee of Iranian-Muslim decent, Mohammad Nemotallhi ("Nemotallhi"), Defendants conspired to (a) remove Javed from his senior position by lodging false disciplinary charges, (b) demote Javed to a lower title, (c) refuse to permit Javed to return to work under the demoted title, (d) delay the determination of Javed's disciplinary charges willfully ignoring CUNY disciplinary protocol; (e) willfully withholding Javed and his family's Visa renewal, refusing and failing to renew same knowing that it was expiring on February 6, 2015; and (f) immediately upon the expiration of Plaintiffs' visa, Defendants terminated Javed on that basis alone.

28. Despite representations and express promises to process Javed's green card application Defendants' repeatedly withheld and delayed same.

29. The Senior Vice President for Finance and Administration and Chief Operating Officer Lloyd A. Blanchard approved and notified senior staff, specifically Colbert, that Javed's green card application would be processed and the funding approved from

Medgar Evers for same. Colbert thwarted the process, thereby preventing Javed from obtaining his green card.

30. Even after Javed employed a private attorney to complete the process, Defendants through its agents refused to cooperate by willfully ignoring or delaying requests for documents and signatures.

31. On several occasions, Colbert demanded evidence from Javed to prove directly to her that his legal status allowed him to work in the USA.[3]

32. Colbert further altered existing protocol, whereby an employee's supervising manager executed any permit renewals. In Javed's case, Colbert directed Javed's supervising manager to no longer sign Javed's permit renewal.

33. On or about 2012 Colbert, who was not charged with processing immigration documents of MEDGAR EVERS employees, directed Javed, stating she had the authority of Medgar Evers' "higher ups", which includes Haggard, to route all of his immigration and legal status documents and signature requests solely through Colbert.

---

[3] Colbert also humiliated Javed when he contracted a virus from a blood transfusion and, notwithstanding the private and confidential nature of same, Colbert forced Javed to leave the office until he returned with a doctor's note stating that he was not infectious although it was public knowledge that the illness could not be transmitted by simply being near Javed.

Javed complied and furnished a doctor's note confirming the readily available knowledge of the illness, yet Colbert subjected him to further humiliation and placed him in quarantine conditions away from other employees.

34. Javed complied, and forwarded Colbert his Form I-129, which was ordinarily and for over ten years processed through Human Resources ("HR") and signed by a direct supervising manager.

35. Colbert refused to sign the I-129 despite numerous email inquiries regarding same, and after weeks of waiting Javed approached Colbert in her office and she advised that she would "investigate if [Javed] was eligible to work in the United States under the TN Visa and whether the information provided in the I-129 renewal form was correct."

36. Upon Javed's advising Colbert that the information provided on the I-129 was furnished by HR who was charged with verifying same, Colbert stated that "it might not matter for you [Javed], but to me it does because I was raised in this country where my ancestors belong []."

37. Several weeks later, Colbert returned the unsigned I-129 to Javed and told him to have his supervising manager execute same, reflecting her intent to harass, delay, stress, burden and injure Plaintiffs.

38. Defendants continued to retaliate against Javed when his access codes and passwords were changed and other obstacles were initiated to hinder and prevent him from completing his duties.

39. Defendants ignored Javed's requests and complaints regarding access limitations hindering his job performance, and Javed relied upon peer relationships to gain access and find ways

to fulfill his duties.

40. On or about 2013, Ruiz replaced Colbert who was transferred after her discriminatory behavior against other persons of non-American and Muslim decent who reported and who filed claims against her both within Medgar Evers and with the EEOC. EDI RUIZ was replaced as the CIO.

41. Ruiz continued to harass and thwart Javed's duties, including, removing his Assistant Sana Fahad (also of Middle Eastern, Asian and or Muslim decent, who later resigned as a result of the discriminatory environment).

42. Ruiz ignored Javed's requests concerning necessary compliance and security matters.

43. Ruiz further assigned Javed's equipment and resources, including staff, to other IT areas without his consent or knowledge thereby sabotaging Javed's ability to complete or undertake security projects.

44. When approached by Javed regarding same, Ruiz stated "[I] don't need much "IT security'" which was Javed's very title and job as "IT Security Manager".

45. Documentary evidence highlights Javed's repeated requests to Medgar Evers through its agents and specifically supervisors for access, updates, equipment, and implementation of critical recommendations all of which were ignored.

46. One such critical recommendation by Javed included a

"change control" protocol to prevent IT system failures at Medgar Evers which he submitted 2 years prior to the failings that would be cited in disciplinary charges contrived against him.

47. On May 21, 2014 fabricated disciplinary charges, which were unrelated to Javed's duties or responsibilities, were used as a pretext to demote Javed from his "IT Security Manager" title to "IT Assistant Level III" pending investigation.

48. Notwithstanding the fact that the CUNY protocol regarding disciplinary action was violated, and Javed did not have any charges pending against his demoted title, Javed was not permitted to return to work under the new title and forced on an administrative leave pursuant to Haggard and Isaacs' plan.

49. On or about June 2014 Javed submitted documentary evidence contradicting the bogus charges issued against him and Medgar Evers never issued its decision on the charges as the investigation was a sham and a finding against Javed could not be made.

50. On June 10, 2014 Isaacs openly admitted that Medgar Evers intended to wait until Javed's visa expired and terminate him on that basis, and that she and Haggard were involved in the HR decision to force Javed on an administrative leave under his demoted title.

51. Isaacs further intentionally and or negligently failed in her responsibility to investigate Javed's duties and the applicability of charges launched against him. Isaacs was

responsible for determining whether the charges were within the scope of Javed's responsibilities. Instead Isaacs simply issued a statement indicating that Javed failed his duties as an IT Assistant (although the charges related to his IT Security Managerial duties which minimal investigation would have revealed were inapplicable).

52. Isaacs further conspired with co-defendants and acted in bad faith by failing and refusing to investigate Javed's allegations submitted in his defense report.

53. Thus Defendants sought to impede resolution of the fabricated disciplinary charges, although Javed timely and expeditiously submitted evidence contradicting the charges, whilst his legal status was held hostage. This was done in concert and with the view to ensure Plaintiffs would loose their legal status and thus ability to proceed with any claim against Defendants.

54. Javed's request for renewal of his and Aneela's H1B-H4/TN-TD legal status pending resolution of the erroneous charges were ignored and or denied despite the fact that he was still employed under his demoted title and an investigation regarding the bogus charges against his senior title was allegedly ongoing.

55. In fact, on Monday, February 9, 2015, prior to any determination on the fabricated disciplinary charges, and whilst Javed was legally employed under a demoted title at Medgar Evers, Gary Johnson, Executive Legal Counsel for Medgar Evers sent via

overnight mail a notice stating, "According to the College's records, your TN-I immigration status expired on [Friday] February 6 [] Therefore your employment at the College is terminated, effective February 7, 2015 and you are removed from the payroll. As required by law, the College will reimburse reasonable the expenses of your return home."

56. The hearing on Javed's disciplinary charges, held on or about June 10, 2014, occurred nine months prior to the expiration of Plaintiffs' legal status, and at which time Javed documented the fabricated nature of the charges. Medgar Evers unable to find Javed culpable conspired to withhold any determination and await expiration of Plaintiffs' H1B/TN legal status.

57. The forgoing demonstrates Defendants retaliatory scheme which was highlighted by their failure to adhere to CUNY protocol in this instance.

58. The skeletal charges issued against Javed in a one page document are unmasked as bogus upon a brief examination of same:

> CHARGE-I: Misconduct - Neglect of Duty and Incompetence
> In or about and between July 2003 and May 20, 2014, Respondent failed to monitor and remediate technical and data vulnerabilities on the network. The results of a vulnerability assessment conducted by CUNY CIS on March 10, 2014 indicate that these assessments have either not been performed or were inadequately performed. As a result, significant security vulnerabilities and deficiencies were present, placing CUNY non-public university data and systems at risk.
>
> CHARGE-II: Misconduct - Providing False Information on Official CUNY Paperwork
> In or about and between 2003 and 2013, Respondent failed to ensure that there was accurate reporting of information on the IT Security Attestation, which the College provides to CUNY CIS. As a result, the college was not sufficiently verified for compliance and that, in fact, significant vulnerabilities and deficiencies were present, placing CUNY non-public university data and systems at risk.

59. In the eleven year period of misconduct alleged, Javed was promoted, received recognitions, certificates for his performance, and salary raises.

60. Javed could not have been responsible for the failures alleged as Colbert had limited Nemotallhi's team, which Javed was on, to managing phone systems and hired an individual named Daniel Sheffer as the senior responsible for the email system.

61. Colbert actively stopped Nemotallhi's team from involvement in IT systems. She used funds Nemotallhi had obtained for the IT Department to hire new staff after the construction of a new AB1 IT building; instead of hiring qualified IT personnel, Colbert hired friends[4] selected by herself and Haggard.

62. Colbert further undertook to issue inter-office memos detailing the new staff's duties and shifting authority and responsibility away from Nemotallhi and his team who were limited to phone management.

63. Statements from other employees, including Reynard Doyley dated September 12, 2013, note that Colbert "literally stops [Javed's supervisor, Nemotallhi] from doing his work. Because [he] is responsible for Telecommunication she denies all requests made to update that system."

64. Nematollahi, who was Javed's supervisor was also determined not to be responsible for Medgar Evers IT failures,

---

[4] New staff, e.g., Daniel Sheffer, were given higher salaries which were never previously paid to IT staff, including existing veterans.

therefore, Javed, a subordinate employee, could not be responsible.

65. The charges described above were bogus because between July 2003 and May 2014, Javed did not hold the same title nor was he responsible for the same duties in this eleven year period.

66. Beyond the above two charges issued against Javed _after_ he furnished support of co-worker Nemotallhi's discrimination claim, Javed was never cited or reprimanded, and never received a negative evaluation formally or informally.

67. A comparison of the disciplinary charges launched against Nemotallhi, demonstrate the pretextual nature of the charges against Javed.

68. In the charges alleged against Javed's supervisor, Nemotallhi was charged with FIVE "Failures constituting just cause" for termination. Javed was cited for TWO purported acts of "misconduct" and the document excludes any "just cause" for termination.

69. After Nemotallhi's claims against Colbert, Colbert was transferred from the IT Department at Medgar Evers to Queens College.

70. Medgar Evers did not terminate Javed based upon the fabricated and erroneous disciplinary charges.

71. Medgar Evers did not follow its Disciplinary Procedure as outlined in the CUNY Civil Service Employee Handbook.

72. Rather, in retaliation for supporting Nemotallhi's claim,

and in a targeted act of discrimination against Javed, and in plain discrimination against his citizenship status, Defendants contrived disciplinary charges and a sham investigation in order to extinguish Plaintiffs' legal status, defame and besmirch Javed's character such that he would find it impossible to secure employment elsewhere and return to the United States.

73. Consequently, co-Plaintiff Aneela has lost her H4/TD status, financial support, husband, and Plaintiffs' minor American children are at immediate risk of losing their home and school environment as known to this family for the fourteen years in which Javed has served as a devoted employee of Medgar Evers.

74. Plaintiffs have been living as tax paying residents of the United States since 2001 and do not have a home elsewhere and lack the resources and means to reestablish themselves and the lives of their minor children in another country.

75. Further, due to Javed's age (50) and the young-hiring culture in the IT industry, and his lack of legal status, Plaintiffs are at a gross disadvantage further exasperated by the negative employment history on Javed's resume from his employer for the last fourteen years, Medgar Evers.

76. In 2001, when Medgar Evers recruited and hired Javed, he had other opportunities and options as IT professionals were in high demand and there was a scarcity of qualified individuals.

77. Javed accepted Medgar Evers' offer upon their express

promise that he would be sponsored for permanent residency upon transferring of his H1B Visa, and that he and Aneela's family's H1B/TN status would be maintained until his permanent residency was finalized[5].

78. After fourteen years of civil service to Medgar Evers, Plaintiffs have accumulated social security benefits, retirement funds, annual leaves, vacation time, medical benefits and similar which are forfeited upon being forced to leave the United States.

79. Further still, Plaintiffs are forced to endure the hardship of depleting their savings as Javed was forced to leave the country upon the expiration of his Visa, while Aneela remains without any legal status with their minor children who attend school and live in Queens County.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT 1 DISCRIMINATION
*TITLE VII OF THE CIVIL RIGHTS ACT OF 1964*
*THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981*
*THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983*
*NEW YORK STATE EXECUTIVE LAW § 296*
*NEW YORK CITY ADMINISTRATIVE CODE § 8-107*

80. Paragraphs "1." through "79." are repeated.

81. Defendants though their agents engaged in a pattern and practice of discrimination against Javed with respect to the terms, conditions and privileges of employment because of Javed's race, religion, national origin and citizenship status.

---

[5] Colbert undertook to personally thwart and prevent Javed's green card application process despite approval from the College's Vice President of Finance and Administration and CEO charged with such approvals.

82. As part of its pattern and practice of employment discrimination, Defendants through their agents treated Javed in a manner evidencing discrimination with respect to its strategy to terminate Javed's employment and legal status, as well as with respect to the investigation, analysis, and subsequent cover-up of Defendants' discriminatory behavior.

83. Defendants under color of law personally interfered with and deprived Javed of his constitutional rights, including the right to petition the government for redress of his grievances and to be free from deprivation of life, liberty and property without due process of law.

84. Defendants acting individually and having been fully advised that Javed was being deprived of his rights, either acted in a concerted, malicious intentional pattern to further discriminate against him, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing the deprivation of his rights.

85. Medgar Evers knew or should have known about the discrimination in the workplace, because of the pattern and history of discriminatory conduct against similarly situated employees (e.g., Nemotallhi, Sana Fahad, Danish Yazdani), comments made publicly by Colbert, Ruiz, Isaacs, and Haggard, and internal and EEOC complaints launched against such employees.

86. Defendants willfully and maliciously conspired to harm

Plaintiffs and make it virtually impossible for them to seek any redress or relief.

87. Medgar Evers failed and refused to take appropriate action to end the discriminatory treatment and conditions to which Javed was subjected, which was clearly motivated by discrimination.

88. As a result of the discriminatory acts of Defendants, and through their agents, Plaintiffs suffered and continue to suffer depression and anxiety.

89. Defendants conspired to follow a systematic pattern of oppression, bad faith and concealment, directed at Javed and continued from on or about 2010 through his termination and is continuing to-date.

90. By reason of the foregoing, Plaintiffs suffered emotional distress, hardship, humiliation and embarrassment, medical and legal expenses, and out of pocket expenses and additional damages for pursuing the claims herein.

**COUNT 2 RETALIATION**
*TITLE VII OF THE CIVIL RIGHTS ACT OF 1964*
*THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981*
*THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983*
*NEW YORK STATE EXECUTIVE LAW § 296*
*NEW YORK CITY ADMINISTRATIVE CODE § 8-107*
*NEW YORK LABOR LAW § 215*

91. Paragraphs "80." through "90." are repeated.

92. Defendants though their agents engaged in various retaliatory and hostile actions against Javed as a result of his opposition to discrimination and as a result of his supporting the

complaints of discrimination launched by his co-workers.

93. Defendants under color of law personally interfered with and deprived Javed of his constitutional rights, including the right to petition the government for redress of his grievances and to be free from deprivation of life, liberty and property without due process of law.

94. Defendants acting individually and having been fully advised that Javed was being deprived of his rights, either acted in a concerted, malicious intentional pattern to further discriminate against him, or knowing such discrimination was taking place, knowingly omitted to act to protect him from continuing deprivation of his rights.

95. The plan of Defendants in so acting was to prevent Javed, through legal, economic and psychological intimidation and hardship, from seeking the equal protection of the laws.

96. As a result of the retaliatory and hostile acts of Defendants, and through their agents, Plaintiffs suffered and continue to suffer depression and anxiety.

97. Defendants conspired to follow a systematic pattern of oppression, bad faith and concealment, directed at Javed and continued from on or about 2010 through his termination and is continuing to-date.

98. By reason of the foregoing, Plaintiffs suffered emotional distress, hardship, humiliation and embarrassment, medical and

legal expenses, and out of pocket expenses and additional damages for pursuing the claims herein.

## COUNT 3 CONSPIRACY
*42 U.S.C. § 1985(3)*

99. Paragraphs "91." through "98." are repeated.

100. Medgar Evers entered into employment contracts with Javed and had a duty and obligation to impart correct and accurate information to Javed and to act in good faith and fair dealings.

101. As an inducement for Javed to accept employment with Medgar Evers, Defendants expressly implied that Medgar Evers would finance the costs of and in fact secure his permanent residency and ensure that his legal status was valid at all times.

102. Plaintiffs reasonably relied on that information in accepting, relocating to the United States and continuing Javed's employment with Medgar Evers to their detriment and Javed performed his duties pursuant to the terms of his employment agreement.

103. Defendants conspired to deprive Javed of the benefits of their employment agreements, including but not limited a valid legal status; medical and vacation benefits; a work environment free from discrimination, harassment, and humiliation; and the right not to be terminated but for incompetency or misconduct.

104. Medgar Evers' promise to finance and file Javed's permanent residency application and ensure that Javed and his family's legal status was valid at all times was not contrary to

any express provision in the parties' contract or agreement.

105. Defendants had numerous opportunities to act in good faith and process, file, and complete or simply cooperate with Plaintiffs' external attorneys to complete Plaintiffs' immigration application for permanent residency, and ensure that Javed's legal status remained valid.

106. Medgar Evers had a duty, promise and obligation to ensure that its agents, employees and officers were not hindering, hampering or otherwise conspiring to sabotage Javed's legal and employment status.

107. Medgar Evers breach was willful, intentional and malicious.

108. By reason of the foregoing, Plaintiffs suffered emotional distress, hardship, humiliation and embarrassment, medical and legal expenses, and out of pocket expenses and additional damages for pursuing the claims herein.

**COUNT 4 INFLICTION OF EMOTIONAL DISTRESS AND LOSS OF CONSORTIUM**

109. Paragraphs "99." through "108." are repeated.

110. Through their systematic conspiracy to harm Plaintiffs, Defendants intentionally and or negligently caused Plaintiffs severe emotional distress.

111. Defendants acted with the intent and or negligence to harm and injure Plaintiffs as outlined in the aforementioned acts and omissions, as well as Colbert's email as early as December 2010

advising others that Javed "won't be available" "may not be here" whilst Medgar Evers through its agents was simultaneously advising Javed that his legal status would be secured and maintained by Medgar Evers at all times.

112. By fabricating disciplinary charges dated May 21, 2014 and terminating Javed's senior title without any hearing or determination of just cause, or pursuant to Medgar Evers' protocol for termination, Defendants' negligently sought to distress Plaintiffs.

113. Defendants were aware of the date that Plaintiffs' legal status would expire and the pressure and stress Plaintiffs were under in order to resolve the erroneous charges launched against Javed whilst their legal status was held hostage.

114. Defendants intentionally and knowingly withheld resolution of the aforementioned erroneous charges, and forced Javed to remain at home emotionally distressed about the future for himself and his family.

115. Defendants' strategy to force Javed to remain on administrative leave (without any cause or misconduct alleged against his title) to be tormented for nine months until his legal status expired and then terminate him was done with an intent to and did actually inflict emotional distress upon Plaintiffs.

116. Aneela suffered physical and psychological damages as a consequence of Defendants' intentional and malicious acts and

omissions and continues to upon losing her legal status, caring for two minor children in the United States, loss of her husband who has been forced out of their country, and without resources, support or any financial support.

117. By reason of the foregoing, Plaintiffs have suffered irreparable harm, undue hardship, financial damages, medical costs including costs for psychological treatment, Plaintiffs' loss of legal status, home, family, mental anguish, and emotional distress.

WHEREFORE, Plaintiffs demand a judgment against Defendants as follows:

a) Make-whole Remedies including but not limited to Reinstatement of senior employment position and title and or Front Pay; and

b) Restoration of H1B-H4/TN-TD status; and

c) Back Pay; and

d) Specific Performance and or Equitable Relief; and

e) Compensatory and Punitive damages; and

f) Attorneys Fees and Costs (42 U.S.C. § 1988); and

g) Any and all further relief which is just and proper against Defendants.

Dated: October 14, 2016          BARRY R. FEERST & ASSOCIATES
        Brooklyn, NY

                        By: _____
                            BARRY R. FEERST, ESQ (BRF3836)
                            194 SOUTH 8TH STREET
                            BROOKLYN, NY 11211
                            T 718-384-5999
                            F 718-384-9111
                            Barry@brfesq.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
SYED JAVED and ANEELA WASIF,

                              Plaintiffs,

          -against-
                                              15-cv-7424 FB-SMG

MEDGAR EVERS COLLEGE OF THE CITY
UNIVERSITY OF NEW YORK; JAMES HAGGARD,
Deputy CIO; CLAUDIA COLBERT as former
Chief Information Officer; EDI RUIZ, as
current Chief Information Officer; and
TANYA ISAACS, Director of Human Resources
being sued Individually as  employees of
defendant MEDGAR EVERS COLLEGE OF
THE CITY UNIVERSITY OF NEW YORK

                              Defendants.
_____

**AMENDED COMPLAINT**
_____

**BARRY R. FEERST & ASSOCIATES**
194 South 8th Street
Brooklyn, New York 11211
t(718)384-9111
f(718)384-5999
barry@brfesq.com