UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
SYED JAVED and ANEELA WASIF,

        Plaintiffs,

  -against-

MEDGAR EVERS COLLEGE OF THE
CITY UNIVERSITY OF NEW YORK,
JAMES HAGGARD, Deputy CIO;
CLAUDIA COLBERT, as former Chief
Information Officer; EDI RUIZ, as current
Chief Information Officer; and TANYA
ISAACS, Director of Human Resources
being sued Individually as employees of
defendant MEDGAR EVERS COLLEGE
OF THE CITY UNIVERSITY OF NEW
YORK,

        Defendants.
--------------------------------------------------x

**MEMORANDUM AND ORDER**
15-cv-7424(FB)(ST)

*Appearances:*
*For the Plaintiff*
BARRY R. FEERST
Barry R. Feerst & Associates
194 South 8th Street
Brooklyn, NY 11211

*For the Defendant*
MARK E. KLEIN
Office of the New York State
Attorney General
120 Broadway, 24th Floor
New York, NY 10271

**BLOCK, Senior District Judge:**

     Plaintiffs Syed Javed ("Javed") and Aneela Wasif ("Wasif") seek damages and

injunctive relief against Javed's former employer, Medgar Evers College of the City

University of New York ("Medgar Evers"). Plaintiffs allege Medgar Evers initiated

disciplinary proceedings, demoted, and eventually fired Javed on the basis of Javed's

national origin and religion. Defendants move to dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6). Defendants' motion is granted.

# I

To say that Plaintiffs' SAC is not a model of effective pleading would be an understatement. The presentation of facts in the complaint is unfocused, not in chronological order, and rarely provides concrete dates for the events on which Plaintiffs rest their claims. Key facts are often alluded to without detail. Plaintiffs frequently make sweeping legal pronouncements without providing a basis for their conclusion. The facts section provides no organization, running on for twelve and a half pages with no subheadings. As a result, it is exceedingly difficult to make out a coherent factual timeline sufficient to even begin evaluating Plaintiffs' claims.

Given that Plaintiffs were given three full attempts to write a coherent explanation of their claims, the total lack of organization and focus on display in the SAC is particularly frustrating. Nonetheless, the Court has done its best to bring order to the chaos of the SAC and create a coherent factual timeline. As always, the Court takes Plaintiffs' allegations, such as they are, as true for the purpose of a motion to dismiss.[1]

---

[1] For the purpose of a 12(b)(6) motion, the Court is limited to the four corners of the Complaint, documents attached to it or incorporated by reference, documents that are 'integral' to Plaintiff's claims even if not explicitly incorporated by reference, and facts of which the Court may take judicial notice. *Leason Ellis LLP v. Patent & Trademark Agency LLC*, 2014 WL

## A. Background

Javed is a citizen of Pakistan and Canada and a Muslim. At all relevant times, he lived in the United States with his wife Aneela. Javed and Aneela have two American-born children. Medgar Evers is a branch of the City University of New York ("CUNY") located in Kings County.[2]

Javed moved to New York from Canada to take a job at Medgar Evers in the Information Technology ("IT") field in 2001. As part of his employment, he was sponsored for an H-1B visa, and Aneela received an H-4 visa as well. For many years, his employment went well; he received positive performance reviews, raises, and promotions, eventually resulting in the title "IT Security Manager" at "the time of his . .

---

3887194, at *2 (S.D.N.Y. July 2, 2014). Defendants provide additional documents which they claim are "integral" to Plaintiff's claim. A document is "integral" if a plaintiff has actual notice of it, and that plaintiff's complaint "relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Plaintiff's reliance on the terms and effects of a document is a necessary prerequisite before a court can consider it. *Id.* The Court will address whether documents provided by Defendant meet this definition as needed.

[2] Technically, Medgar Evers is a constituent senior college in the CUNY system and not a legally cognizable entity apart from CUNY. *See* N.Y. Educ. Law §§ 6202(2) and (5), 6203; *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam). "Consequently, CUNY is the properly named Defendant in this action." *Id.* Therefore, CUNY will be deemed substituted in place of Medgar Evers as the properly named Defendant. *See, e.g.*, *Allen v. N.Y.C. Dept. of Envtl. Prot.*, 51 F. Supp. 3d 504, 516 (S.D.N.Y. 2014) (substituting properly named defendant for improperly named one). However, because all the alleged events took place at Medgar Evers, for purposes of this opinion, the Court will continue to refer to Defendant by the name Medgar Evers.

. termination."[3] This all ended with the entrance into the department of Defendant Claudia Colbert ("Colbert") in 2010.

**B.     Colbert's Alleged Discrimination**

Colbert was the Chief Information Officer ("CIO") of Medger Evers from 2010 to 2013 and appears to have had some sort of supervisory role over Javed (the complaint does not specify their relationship).

The allegations against Colbert are salacious. Colbert "singled out and targeted with intimidation, harassment and threats those employees of Middle Eastern or South Asian national origin, race, and or [sic] of the Islamic religion." SAC ¶ 22.The many discriminatory acts Colbert is alleged to have committed against these employees include:

•     Publicly humiliating them;

•     Demanding that they be fired (no specific instance was described);

•     Denying access to resources to impede their job performance (she allegedly denied all requests made by Javed's Iranian supervisor, Mohammad Nematollahi ("Nematollahi"), to upgrade the telecommunications system simply because he was Iranian);

•     Removing staff (she allegedly transferred the entire staff of Iranian Head Librarian Danish Yazdani away from him, prompting him to resign, at which point she transferred the entire staff back under the new Head Librarian).

_____

[3] The SAC is inconsistent on this point; it later describes Javed as having been demoted to IT Assistant Level III by the time he was fired.

Javed also alleges she committed the following specific acts against him:

- At some point in 2012 or 2013, Colbert demanded to see Javed's immigration papers and route his reapproval for his visa through her (even though she had no authority to do so). According to Javed, this prevented him from obtaining a green card (though he does not specify how). She also attempted to prevent his visa paperwork from being renewed;

- At some point in 2012, she rerouted his Form I-129 through her office and refused to sign it; however, a few weeks later, she returned it to him and told him to process it through proper channels;

- During one of these immigration disputes, she told Javed "[i]t might not matter for you, but to me it does because I was raised in this country where my ancestors belong []";

- At an unspecified time, she learned Javed had contracted a virus from a blood transfusion and forced him to stay away from work out of fear he was "infectious." When he returned with a doctor's note saying he was not, she put him in "quarantine conditions" away from other employees anyway, publically humiliating him.

## C.    Colbert Leaves, Ruiz Takes Over

From here, the facts become murky. However, the following events appear to have occurred, in some order during 2012 and 2013, with some relationship to one another:

- Nematollahi filed an unspecified legal action against Medger Evers related to Colbert's conduct.

- Colbert was transferred from Medger Evers to Queens College.

- Nematollahi was charged with disciplinary misconduct, of which it appears he was eventually cleared.

•   Javed provided an affidavit in support of Nematollahi's legal action.[4]

The outcome of Nematollahi's legal action is unclear. However, it appears possible that Colbert's transfer was motivated in some part by Nematollahi's legal proceedings.

After Colbert left, Edi Ruiz ("Ruiz") took over as the CIO some time in 2013. Javed complains that Ruiz removed his assistant, Sana Fahad, also of "Middle Eastern, Asian, or Muslim decent [sic]," who later resigned. Ruiz continued Colbert's practice of ignoring requests for resources for the IT Security department. When Javed approached her to complain, Ruiz told him, "[I] don't need much IT security." SAC ¶ 44. According to Javed, this neglect was, at least in part, responsible for what happened next.

**D.    The Disciplinary Proceedings**

At some point in either 2013 or 2014, Medgar Evers appears to have suffered some sort of IT systems failure. Once again, the SAC provides virtually no details as to

_____

[4] Defendants provide a copy of the affidavit. This document is properly before the Court because Javed's retaliation claim is based entirely on his filing of this affidavit, and therefore it is integral to his complaint. The affidavit was filed September 10, 2013 and asserts that Medgar Evers agreed to file Javed's green card case but never did so.

what occurred.[5] What is clear is Javed took partial blame for it.[6]

On May 21, 2014, Javed faced serious disciplinary charges stemming from this failure and was demoted to "IT Assistant Level III" pending the close of investigation. He was also placed on administrative leave. Javed was charged with the following:

> CHARGE-I: Misconduct – Neglect of Duty and Incompetence
> In or about and between July 2003 and May 20, 2014, Respondent failed to monitor and remediate technical data vulnerabilities on the network. The results of a vulnerability assessment conducted by CUNY CIS on March 10, 2014 indicate that these assessments have either not been performed or were inadequately performed. As a result, significant security vulnerabilities and deficiencies were present, placing CUNY non-public university data and systems at risk.
> CHARGE-II: Misconduct – Providing False Information on Official CUNY Paperwork
> In or about and between 2003 and 2013, Respondent failed to ensure that there was accurate reporting of information on the IT Security Attestation, which the College provides to CUNY CIS. As a result, the college was not sufficiently verified for compliance and that, in fact, significant vulnerabilities and deficiencies were present, placing CUNY non-public university data and systems at risk.

SAC at 13.

Javed, of course, contests vigorously that he did anything wrong, calling these charges "fabricated" and "bogus" throughout the SAC. He claims these charges were brought in retaliation for his filing of an affidavit in Nematollahi's lawsuit, that the

_____

[5] Defendants provide an explanation and supporting documentation here as well. However, because Javed did not rely on these documents in making his claim, they were not integral to his complaint. Therefore, the Court will not consider them now and will instead rely on the facts as alleged in the SAC.

[6] Indeed, according to the SAC, Nematollahi was cleared of wrongdoing related to the failed IT system.

damage to Medgar Evers's IT systems were caused by Colbert's obstruction and Ruiz's neglect, and that, despite his job title "IT Security Manager," the mismanagement of Colbert and Ruiz had effectively neutered him and his entire department and rendered him blameless for the failure of Medgar Evers's IT security systems.

Javed faced a disciplinary hearing on June 10, 2014, at which time he "documented the fabricated nature of the charges." SAC ¶ 56. However, a final decision was never issued, and Javed was left on administrative leave for nine months. According to Javed, on the day of the hearing, Tanya Isaacs ("Isaacs"), Medgar Evers's HR Manager, told Javed that they intended to never resolve the disciplinary issue and simply wait until Javed's visa expired and terminate him on that basis. Javed also alleges that James Haggard ("Haggard"), Deputy CIO of CUNY, "conspired" with Isaacs in this plan.

Javed alleges, without specifics, that this was in violation of the Disciplinary Procedure outlined in a document called the "CUNY Civil Service Employee Handbook."[7]

---

[7] In their briefing, Defendants and Plaintiffs both refer to a different document, provided by Defendants, called, in pertinent part, "2006-2009 Agreement covering Clerical Administrative and Professional Employees of the Classified Service of the City University of New York . . . ." ("2006-2009 Agreement"). Def's Mot. Dismiss Ex. B. However, the operative facts of this case occur from 2013-2015. Therefore, this document is not relevant.

**E.      Javed Loses Work Visa and Job**

On February 9, 2015, still with no resolution of his disciplinary action, Javed received an email notifying him that his "TN-I immigration status expired on [Friday] February 6" and that he was therefore terminated from his position. SAC ¶ 55.

**II**

On January 19, 2015, Javed filed a claim with the Equal Employment Opportunity Commission ("EEOC"),[8] and on October 3, 2015, he received a Dismissal and Notice of Right to Sue from the EEOC.

Plaintiffs filed their complaint on December 30, 2015, their First Amended Complaint ("FAC") on May 27, 2016, and their Second Amended Complaint ("SAC") on October 14, 2016. The SAC grouped its claims into four causes of action: discrimination, retaliation, conspiracy, and infliction of emotional distress/loss of consortium. Within these four causes of action, Plaintiffs allege violations of Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, New York State Executive Law § 296, New York City Administrative Code § 8-107, and New York Labor Law § 215. Defendants filed this Motion to Dismiss on February 28, 2017.

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) "To

_____

[8] The SAC does not specify when Javed filed his EEOC claim. However, the First Amended Complaint does. "The Court may take judicial notice of [a prior complaint] as matters of public record." *Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 245 (S.D.N.Y. 2011).

survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge[] [its] claims . . . across the line from conceivable to plausible to proceed." *E.E.O.C. v. Port Authority*, 768 F.3d 247, 254 (2d Cir. 2014) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *Iqbal*, 556 U.S. at 680) (citation omitted).

## III

### A.    Abandoned Claims

As an initial matter, Plaintiffs' Opposition to Defendants' Motion to Dismiss fails to address many of Defendants' arguments or defend three of their four claims. "[C]ourts in this circuit have held that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims.' " *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) (quoting *Youmans v. Schriro*, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013)); *see also Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) (dismissing a claim because plaintiff failed to defend it in her opposition brief).

10

Plaintiffs failed to defend any of Wasif's claims, the Retaliation claim, the Intentional and Negligent Infliction of Emotional Distress claims, the Loss of Consortium claim, the 42 U.S.C. § 1981 claims, and the 42 U.S.C. § 1985 claims. Therefore, all of these claims are dismissed. Because Plaintiff Wasif is left with no claims, she is dismissed from this action. Because Plaintiffs' second, third, and fourth causes of action rely entirely on the Retaliation claim, 42 U.S.C. § 1985, and the Emotional Distress and Loss of Consortium claims, these causes of action are dismissed.

The Court moves on to the claims that Javed attempts to defend—his 42 U.S.C. § 1983 claims, Title VII Discrimination claim, and state law claims.

**B.    Section 1983 Claims**

Both parties treat the SAC as having pleaded procedural due process and equal protection claims as part of his SAC. Though the Court is skeptical these causes of action were clearly pleaded, it will address them anyway. Section 1983 provides, in relevant part:

> Every person who, under color [of law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

A § 1983 claim has two elements: (1) the defendant acted under color of state

law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *Quinn v. Nassau Cty. Police Dept.*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999); *Eagleston v. Guido*, 41 F.3d 865, 876 (2d Cir. 1994).

The parties do not dispute that the Defendants operated under "the color of state law." Indeed, the Second Circuit has held that "[t]here can be no question that defendants . . . are, in their personal capacities, amenable to suit under [§ 1983], inasmuch as they were conducting themselves as supervisors for a public employer and thus were acting under color of state law." *Annis v. Cty. of Westchester*, 36 F.3d 251, 254 (2d Cir. 1994).

The question, then, is whether Javed has sufficiently pleaded a deprivation of his constitutional rights. The Court holds that he has failed to do so.

**1.    Eleventh Amendment**

As a threshold matter, the Eleventh Amendment to the United States Constitution bars suit in federal court for relief against a State by a private citizen absent the State's consent or a valid Congressional abrogation of immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). This protection extends to the senior colleges of CUNY, such as Medgar Evers, which are State entities. *See Clissuras*, 359 F.3d 79, 81, 81 n.2 (2d Cir. 2004). This protection also covers the individual Defendants acting in their official capacities. *See Will*, 491 U.S. at 71. This

leaves only the individual Defendants in their personal capacities.

Javed argues that he seeks prospective relief, namely reinstatement of his position, and therefore, the Eleventh Amendment does not apply. *See Verizon Maryland, Inc. v. Pub. Serv. Com'n*, 535 U.S. 635, 645 (2002); *see also Ex parte Young*, 209 U.S. 123 (1908). However, to receive prospective relief, a plaintiff must allege an "ongoing" violation of Federal law. *Verizon Maryland*, 535 U.S. at 645. "A plaintiff may not . . . seek even equitable relief (such as reinstatement to an employment position) as compensation for past, isolated state conduct." *A.A. v. Bd. of Educ., Cent. Islip Union Free Sch. Dist.*, 196 F. Supp. 2d 259, 267 (E.D.N.Y. 2002).

Here, Javed cannot allege ongoing violation of Federal law because any misconduct against him stopped, at the latest, when he was let go from Medgar Evers. What he seeks instead is relief for "past, isolated state conduct." *See id.*

Therefore, the Eleventh Amendment bars all 42 U.S.C. § 1983 claims against Medgar Evers and the individual Defendants in their official capacities. It does not bar suits against the Defendants in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991).

## 2.    Equal Protection Claim

The parties treat Javed's SAC as having plead an equal protection claim. However, the only language supporting an equal protection claim is in ¶ 95, as part of Javed's retaliation claim, where Javed alleges "[t]he plan of Defendants in so acting

13

was to prevent Javed, through legal, economic and psychological intimidation and hardship, from seeking the equal protection of the laws." SAC ¶95. Simply including the words "equal protection" in a complaint is insufficient to allege a plausible cause of action. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Further, this claim is included in Javed's retaliation claim, which he abandoned in his Opposition. Finally, even if Javed had not abandoned this claim, the Equal Protection Clause does not support a claim for retaliation. *See Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination."). Therefore, to any extent that the SAC attempts to plead an equal protection claim, it fails.

### 3. Procedural Due Process Claim

The parties treat the SAC's allegation that CUNY's failed to follow "the CUNY protocol regarding disciplinary action" as a procedural due process claim. However, the SAC does not allege what that protocol is or how it was violated. "The court need not credit conclusory statements unsupported by assertions of fact or legal conclusions and characterizations presented as factual allegations." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In his Opposition, Javed attempts to resuscitate this claim by pointing to

language in the 2006-2009 Agreement, provided by Defendants, requiring a decision within "days" of the disciplinary hearing. However, the 2006-2009 Agreement was not operative in 2014, at the time of Javed's hearing. Even if it were, Defendants rightfully point out that the 2006-2009 Agreement provides a grieved party the right to escalate the proceedings in the event that a decision was not timely made. Javed never exercised that right.

Further, Javed had an adequate post-termination proceeding available to him—an Article 78 proceeding in state court. *See Hoover v. Cty. of Broome*, 340 Fed. App'x 708, 711 (2d Cir. 2009) (holding that failure to "utilize the adequate post-deprivation remedy of an Article 78 proceeding" warranted dismissal of plaintiff's procedural due process claim).[9]

Therefore, Javed has failed to provide factual support for his procedural due process claim, and it must be dismissed.

## C.    Title VII

This leaves Javed's Title VII claim for discrimination. As an initial matter, "an individual defendant cannot be held personally liable under Title VII." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 n.8 (2d Cir. 2006); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-14 (2d Cir. 1995), *abrogated on other grounds by*

---

[9] The SAC at no point alleges that Javed was due a pre-deprivation procedure. Indeed, the challenged procedure itself—the administrative hearing—was a post-deprivation procedure since Javed had already been demoted and put on administrative leave at the time it occurred.

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Therefore, Javed's Title VII claims are dismissed against all defendants in their personal capacity.

## 1.     Title VII Time Bar

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006); 42 U.S.C. § 2000e-5. The claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct. *Williams*, 458 F.3d at 69. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Javed alleges that he filed his EEOC complaint on January 19, 2015. Therefore, any conduct that occurred prior to March 25, 2014, 300 days prior, is time barred. Javed failed to respond to Defendants' argument on this point; therefore, he has abandoned his claims as applied to discrete acts before this date.[10] This includes all conduct by Defendant Colbert, who left the office in 2013.

The only alleged conduct that falls after this date is Javed's demotion, forced

---

[10] Javed also does not allege that Colbert's actions were subject to the "continuing violation" doctrine. Regardless, "[t]he courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of compelling circumstances." *Falinski v. Kuntz*, 38 F. Supp. 2d 250, 257 (S.D.N.Y. 1999). Here, Javed has made no showing, much less a "compelling" one.

administrative leave, and eventual firing.

## 2.     Discrimination Claim

"In order to establish a *prima facie* Title VII claim, [a plaintiff] must show that (1) [he] is a member of a protected class; (2) [he] was qualified for [his] position and satisfactorily performed [his] duties; (3) [he] suffered an adverse employment action; and (4) the circumstances surrounding that action giv[e] rise to an inference of discrimination." *Buckley v. New York*, 959 F. Supp. 2d 282, 296 (E.D.N.Y. 2013). To satisfy the fourth prong, the plaintiff must allege facts "sufficiently to plausibly suggest [a defendant's] discriminatory state of mind" and "conclusory allegations are not entitled to the presumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 677-684).

It is proper to dismiss a claim for discrimination when the complaint itself "acknowledge[s] [defendants had a] non-discriminatory reason for the adverse action and fail[s] to allege facts which, if proved, would establish that this reason for the penalty was pretextual, and that the action was, in fact, taken due to a discriminatory animus." *Martinez v. New York*, 338 Fed. App'x 71, 73 (2d Cir. 2009) (summary order).[11]

*Martinez* is instructive. In *Martinez*, the plaintiff alleged he was fined three days' pay because of his supervisor's bias against African-Americans. *Id.* The district court dismissed the case pursuant to a 12(b)(6) motion. *Id.* The Second Circuit affirmed

---

[11] In the Second Circuit, Summary orders issued on or after January 1, 2007 may be cited, though they do not have precedential effect. LR 32.1.1.

because the plaintiff's own complaint acknowledged a non-discriminatory reason for the dismissal—that plaintiff had confronted the supervisor—and the complaint failed to allege facts which, if proved, would established that this reason was pretextual. *Id.*

Here, the adverse actions complained of by Javed are his demotion, administrative leave, and eventual firing. However, Javed has not alleged any facts that would give rise to an inference of discrimination surrounding these events. Instead, the facts alleged in the SAC provide a much more pedestrian reason for Medgar Evers's actions against him: that he was disciplined because of the failure of Medgar Evers's IT security systems while he was IT Security Manager. This is borne out by the disciplinary charges themselves, which accuse Javed of "Misconduct – Neglect of Duty and Incompetence" and "Misconduct – Providing False Information on Official CUNY Paperwork." SAC ¶ 58. Further, Plaintiffs themselves admit that Nematollahi was eventually cleared of misconduct, despite sharing the same protected class as Javed. SAC ¶ 64.

All of Javed's factual allegations of discriminatory conduct relate to one person—Colbert. However, Colbert had been removed from her position months before the disciplinary proceedings against Javed began and played no role in those proceedings. Further, *all* of the conduct by Colbert is time-barred under Title VII, as discussed above.

The worst conduct alleged against Ruiz was that she removed Javed's assistant

and told Javed, "we don't need much IT security." However, Plaintiffs provide nothing but conclusory statements to suggest these actions were motived by discrimination. Javed may rightfully have a complaint that the actions of Ruiz inhibited his ability to do his job, contributing to the failure of the IT system while he was in charge of it. However, he provides no facts to suggest her actions were animated by discrimination, rather than simple incompetence.

Javed alleges nothing against Isaacs and Haggard except that they were involved in the decision to put him on administrative leave, and that Isaacs admitted that they planned to let his immigration status expire and terminate him on that basis. These allegations provide no evidence of a discriminatory animus, especially because Javed admits that he was placed on administrative leave because of the the IT failure. Javed further admits that he recommended security updates, that these recommendations were ignored or overturned, and that the failure to install these updates contributed to the IT failure under his watch. *See* SAC ¶ 45-46. However, Javed did nothing to alert higher ups at the college about the glaring problem with security. Indeed, his second disciplinary charge for Providing False Information on Official CUNY Paperwork explicitly accuses him of providing false information to CUNY in order to cover up his noncompliant and vulnerable IT systems.

Javed's failure to perform the basic functions of his job is sufficient to explain why he was disciplined. Nor has Javed alleged any facts tending to show that Medgar

Ever's concern about the IT failure was pretextual.

Finally, Javed does not even attempt to dispute that he was ultimately fired because his immigration status expired. Once that occurred, Medgar Evers no longer had the legal right to employ Javed. Therefore, the decision to fire Javed, which was mandatory under United State immigration law, could not have been because of discrimination. Javed has failed to state a valid Title VII discrimination claim.

## E.    State Law Claims

Because the Court has dismissed all of Javed's federal claims, the Court may exercise its discretion and dismiss Javed's state law claims as well. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (holding "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.") Regardless, his state law claims largely overlap with his Title VII claims. Therefore, if the Court were to reach them on the merits, it would dismiss them anyway.

## IV

Despite the inadequate pleading and briefing, the Court did its best to meticulously evaluate Plaintiffs' claims in case a legitimate cause of action was hidden within the mess of the SAC. At the end of the day, however, Plaintiffs were not proceeding *pro se*, and it is not the Court's job to do Plaintiffs' counsels' work for them. The Court gave Plaintiffs two opportunities to amend their Complaint. They do not need a third.

All of Plaintiffs' claims are dismissed with prejudice. Defendants' motion to dismiss is **GRANTED** in its entirety.

**SO ORDERED**

_____

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 29, 2017